773 F.2d 105
 41 UCC Rep.Serv. 1501
 In the Matter of ASSURED FASTENER PRODUCTS CORPORATION, Debtor.
Joel A. SCHECHTER, Trustee, Plaintiff-Appellee,
v.
ACME SCREW COMPANY, INC., Solar Screw Corporation, and
Southern States Fastener, Inc., Defendants-Appellants.
 No. 84-2548.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 19, 1985.
Decided Aug. 30, 1985.
 
 1
 Chester H. Foster, Arnstein, Gluck, Lehr, Barron & Milligan, Chicago, Ill., for plaintiff-appellee.
 
 
 2
 Joel A. Schechter, Grossman Mitzenmacher & Schechter, Chicago, Ill., for defendants-appellants.
 
 
 3
 Before WOOD and EASTERBROOK, Circuit Judges, and DUMBAULD*, Senior District Judge.
 
 
 4
 DUMBAULD, Senior District Judge.
 
 
 5
 Plaintiff, trustee in bankruptcy of a fastener company, brought suit to collect some $90,000.00 owed by three debtors of the bankrupt for screws sold to them by the fastener company. However, the bankrupt owed Rosco Specialty Company (for wire purchased and a loan) the sum of $188,857.05. That company, as well as the three debtors sued by the trustee, were substantially controlled by one William J. Roche, Sr., and his family. Roche knew of the bankrupt's shaky condition; and, five months before the bankruptcy petition was filed, Rosco Specialty Company assigned to each of the three debtors sued by the trustee an amount of its accounts receivable due to it from the fastener company equal to the obligation of the particular debtor to the fastener company.
 
 
 6
 The debtors thereupon contended that their debts to the bankrupt had been reduced to zero and that the trustee could not collect anything from them, by reason of their right under 11 U.S.C. Sec. 553[1] to offset their claims against the bankrupt against the bankrupt's claim against them. The bankruptcy court rejected this defense and rendered judgment for the trustee. The District Court affirmed. We reverse.
 
 
 7
 The mutual debts between the bankrupt and the three creditors sued by the trustee all "arose before the commencement of the case" [the bankruptcy proceedings]. Likewise the claims of the creditors were not transferred to them "after the commencement of the case" nor were they transferred "after 90 days before the date of the filing of the petition; and while the debtor was insolvent."[2] The assignment in the case at bar was made five months before filing of the bankruptcy petition.
 
 
 8
 Therefore Sec. 553 authorizes the set-off.
 
 
 9
 But appellees argue that the assignment is an invalid transaction under the law of Illinois since the bankrupt had no notice of it before filing its petition. It is also contended that the assignment was void for lack of consideration and because it was a partial assignment without acceptance by the obligor.
 
 
 10
 The Uniform Commercial Code as adopted in Illinois, upon which the bankruptcy court relied, Ill.Rev.Stat. Ch. 26 Sec. 9-318(3), provides:
 
 
 11
 The account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. If requested by the account debtor, the assignee must seasonably furnish reasonable proof that the assignment has been made and unless he does so the account debtor may pay the assignor.
 
 
 12
 This provision of Illinois law, like that in many jurisdictions, is simply designed to protect an obligor who has already paid the original obligee without notice that an assignment has been made. The obligor who has not received notice of assignment is not required to pay twice. The payment to the original obligor discharges the debt.[3] It is obvious that the bankrupt has not paid the obligation involved here.
 
 
 13
 The Illinois law on this point was clearly elucidated in the opinion of Chief Judge Cummings in Overseas Development Disc Corp. v. Sangamo Const. Co., 686 F.2d 498, 505 (7th Cir.1982)[4]: "The purpose of such a provision is to make the assignee bear the risks of leaving the obligor in the dark. Here those risks never materialized. Neither Sangamo nor Overseas paid any money to Farouki before ... notice of the assignment." The effectiveness of the assignment as between the assignor and assignees themselves is not affected by the rule protecting the obligor who pays without notice.
 
 
 14
 Similarly, lack of consideration might be relevant if the dispute were between the assignor and the assignee. But with respect to other parties the presence or absence of consideration is immaterial. There is no reason why a generous well-to-do grandfather may not make a birthday gift to his grandson or grandaughter which consists of a chose in action just as he might of a fur coat or a sports car. In scriptural phrasing, "Is it not lawful for me to do what I will with mine own?" (Mt. 20:15).
 
 
 15
 Nor is the argument persuasive that the assignments can be disregarded because they were partial assignments and made without notice to or consent of the obligor. The rule at common law prohibited "splitting" a cause of action. Unless he consents otherwise the obligor was entitled to pay the debt in solido and uno ictu, and could not be subjected to double litigation. In equity, however, partial assignment was recognized. In equity the debtor can pay the whole amount into court at once, and the court can equitably distribute it and bring all the parties in interest before the court for adjudication of their respective rights. 3 Williston on Contracts (3d ed. Jaeger, 1960) 299-313, Secs. 441-443.
 
 
 16
 For purposes of applying the rules relating to partial assignment, the bankruptcy proceeding is properly to be treated as one where (as in a court of equity) all the parties are before the court. In the case at bar the bankrupt, the assignor, and the assignees are all parties. There is no "splitting" of a legal cause of action in the bankruptcy procedure. The rights of all parties can be appropriately recognized.
 
 
 17
 Accordingly, the judgment of the District Court is
 
 
 18
 REVERSED.
 
 
 
 *
 The Honorable Edward Dumbauld, Senior District Judge, of the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 That section reads:
 (a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that--
 (1) the claim of such creditor against the debtor is disallowed other than under section 502(b)(3) of this title;
 (2) such claim was transferred, by an entity other than the debtor, to such creditor--
 (A) after the commencement of the case; or
 (B)(i) after 90 days before the date of the filing of petition; and
 (ii) while the debtor was insolvent; or
 (3) the debt owed to the debtor by such creditor was incurred by such creditor--
 (A) after 90 days before the date of the filing of the petition;
 (B) while the debtor was insolvent; and
 (C) for the purpose of obtaining a right of setoff against the debtor.
 (b)(1) Except with respect to a setoff of a kind described in section 362(b)(6) or 365(h)(1) of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the latter of--
 (A) 90 days before the date of the filing of the petition; and
 (B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.
 (2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.
 (c) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.
 
 
 [2]
 By virtue of Sec. 553(c) the bankrupt is "presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition."
 
 
 [3]
 The situation is somewhat akin to the English rule announced by Lord Chancellor Lyndhurst in Dearle v. Hall, 3 Russ. 1, 48 (1828), which protects the obligor who pays the first assignee giving notice when another previous assignee failed to give notice
 
 
 [4]
 This case illustrates the fundamental principle distinguishing between delegation of duties and assignment of rights. 686 F.2d at 504